IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SANTOS D. TORRES-OLAN, ) | Case No. 1:22-cv-67 |
| ) | |
| Plaintiff ) | |
| v. ) | RICHARD A. LANZILLO |
| ) | Chief United States Magistrate Judge |
| ) | |
| SGT. WILLIAM O'BRIEN, MICHAEL ) | |
| WATSON, RICHARD BEDNARO, ) | MEMORANDUM OPINION |
| MICHAEL FOX, TAMAS BONYAI, ) | ON DEFENDANTS' MOTION FOR |
| BRENTON BOYD, DANIEL HARMON, ) | SUMMARY JUDGMENT [ECF NO. 18] |
| ) | |
| Defendants ) | |

MEMORANDUM OPINION

I.   Introduction

Plaintiff Santos D. Torres-Olan, currently an inmate at the State Correctional Institution at Mahanoy, filed a complaint pursuant to 42 U.S.C. § 1983 against seven employees of the Pennsylvania Department of Corrections alleging violations of his Eighth Amendment that he alleges Defendants committed in February of 2020, while he was an inmate at the State Correctional Institution at Albion. ECF No. 3.

Defendants have filed a Motion for Summary Judgment, a supporting brief, and a Concise Statement of Material Facts with supporting exhibits. ECF Nos. 18-21. Plaintiff has filed a Response, a brief in opposition, and a responsive Concise Statement of Material Facts. ECF Nos. 26-27, 32. The motion is ripe for review.[1]

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge.

II.     Standard of Review

Federal Rule of Civil Procedure 56(a) requires a court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.* at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

In determining whether a genuine issue of material fact remains for trial, the court must consider the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To defeat a properly supported motion for summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings but must identify evidence that demonstrates the existence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Furthermore, the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). The moving party may also rely upon

the absence of evidence to support an essential element of the opposing party's claim as a basis for the entry of summary judgment because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

III.  Analysis

    A.  Facts

The following facts are undisputed.[2] On February 12, 2020, at around 11:20 a.m., Corrections Officer Shawn Crum conducted a pat search of Plaintiff as he was returning from a meal. When Crum asked Plaintiff if he had anything in his pockets, Plaintiff responded that he had a bottle of seasoning. Crum informed Plaintiff that he was not allowed to possess the seasoning and instructed Plaintiff to dispose of it in the trash. Plaintiff instead poured the contents of the bottle on the floor and punched Crum in the head with a closed fist approximately six times. Two other prison officers, Sergeant Ryan and Unit Manager Santos, separated Crum and Plaintiff. Plaintiff was ordered multiple times to place his hands on the wall, but he did not obey those orders. Plaintiff swung at Ryan and struck him in the left arm. He was subsequently handcuffed and escorted to the Restricted Housing Unit ("RHU").[3]

Plaintiff's transport to the RHU was initially supervised by Lieutenant Partsch but was taken over by Lieutenant Richard Bednaro. Escorting staff members were Sergeants Michael Watson and William O'Brien, and Corrections Officers Michael Fox, Daniel Harmon, Brenton Boyd and Tamas Bonyai. During the escort, Plaintiff was placed on the ground by Fox, O'Brien,

---

[2] These facts are taken from Defendants' Statement of Material Facts Not In Dispute, ECF No. 20, and Plaintiff's Responsive Concise Statement of Matters, ECF No. 32. Defendants have also submitted video evidence of the altercation with Crum and of the transport to the RHU. ECF Nos. 21-2 and 21-3.

[3] Plaintiff states that he was criminally charged and conviction for his role in the altercation with Crum and Ryan. ECF No. 32 at 1.

Harmon, and Boyd. A spit hood was subsequently placed on Plaintiff and he was placed in a restraint chair to continue the escort to the RHU. Upon arrival at the RHU, it was noted that Plaintiff had abrasions on his left shoulder. In the RHU, Plaintiff was placed in an observation cell.

On February 20, 2020, Plaintiff filed Grievance #851802, in which he alleged that he was assaulted on the trip to the RHU and that while in the RHU, he was denied food for four days and his toilet was shut off. An Allegations of Abuse Investigation was conducted and Plaintiff's allegations were determined to be unfounded. His grievance was ultimately denied.

B. Claims

Plaintiff claims that his Eighth Amendment rights were violated in two ways: (1) the use of excessive force against him during his transport to the RHU; and (2) the inhumane conditions of confinement he experienced in the RHU.

1. Excessive force

The central question in evaluating an excessive force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). There are several factors that a court examines in determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, including: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.'" *Brooks*, 204 F.3d at 106 (quoting *Whitley v. Albers*, 475 U.S. 312 (1986)).

Where the events at issue have been captured on videotape, the court must consider the videotaped evidence in determining whether there is any genuine dispute as to material facts. *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007). The court must view the facts in the light depicted by the videotape. *See id.* (relying on a videotape in assessing summary judgment evidence and admonishing that the lower court "should have viewed the facts in the light depicted by the videotape."). If a review of the videotape "refutes an inmate's claims that excessive force was used against him, and the video evidence does not permit an inference that prison officials acted maliciously and sadistically, summary judgment is entirely appropriate." *Smalls v. Sassaman*, 2019 WL 4194211, at *8 (M.D. Pa. Sep. 4, 2019) (citing *Tindell v. Beard*, 351 Fed. Appx. 591 (3d Cir. 2009)). *See also McCullon v. Saylor*, 2013 WL 1192778, at *14 (M.D. Pa. Mar. 4, 2013) ("[I]n assessing ... claims in a case where an encounter is captured on videotape we are mindful of the fact that when 'videotape refutes [an inmate's] assertion that defendant[s] used excessive force,' or when the 'video shows that [an inmate] did not suffer any physical distress' ... we should conclude 'viewing the evidence in the light most favorable to [the inmate that], no reasonable finder of fact could view the video of the incident and determine that [defendants] acted maliciously and sadistically,' and may enter summary judgment on the excessive force claim.") (quoting *Tindell*, 351 Fed. Appx. at 596). Notably, while the lack of significant injury weighs against an excessive force claim, it is not dispositive. *Aruanno v. Maurice*, 790 Fed. Appx. 431, 2019 WL 5597653, at *2 (3d Cir. 2019); *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.").

In support of their motion for summary judgment, Defendants argues that Plaintiff has not established an excessive force claim because the amount of force used was objectively reasonable

5

in order to restore discipline in light of Plaintiff's behavior prior to and during the transport. ECF No. 19 at 7-9. Further, Defendants argue, Plaintiff's *de minimis* injury did not rise to the level required to support an excessive force claim. *Id.* at 9-10.

In his brief in response to the motion for summary judgment, ECF No. 27, Plaintiff does not directly respond to these arguments. Instead, he makes three points: (1) he was already in handcuffs and in custody prior to the transport; (2) the camera operator did not properly focus the camera during the alleged assault; and (3) on the video, he can be heard saying "I am not resisting," multiple times during the alleged assault. ECF No. 27 at 2.

In his complaint, Plaintiff alleged that, during the transport to the RHU, he fell to the ground, where Defendants repeatedly punched him in the face and body and twisted his legs and ankles, causing him to pass out and suffer severe bruising, swelling in the eyes, nose, wrist, ankles, a dislocated shoulder and nerve damage to his right hand. ECF No. 3 at 3-4. However, during the abuse investigation into this incident, Plaintiff told an interviewer that he was "not exactly punched and kicked, but they kept me on the ground using their knees, which felt like kicks and punches." ECF No. 21-5 at 5. Further, the sole evidence of injury to Plaintiff following the transport is the superficial abrasion on his shoulder reported upon his arrival at the RHU. ECF No. 21-1 at 20-21.

The Court has reviewed the video evidence of the transport. The video refutes Plaintiff's claims that Defendants repeatedly punched him the face and body and that he passed out during the "assault." Due to the angle of the video, it neither clearly supports nor refutes Defendants' assertion that Plaintiff was refusing to walk prior to their putting him on the ground. Nonetheless, there is no evidence in the video that the force utilized by Defendants in restraining Plaintiff on the ground until the restraint chair arrived was malicious or sadistic in any manner. The video shows that when Plaintiff is taken to the ground, Defendants adjust their positions in holding him

6

down for less than 30 seconds, and then remain largely motionless in those positions for approximately 3 minutes until the chair arrives.[4] At no time during that period does Plaintiff stop yelling in protest, which belies his claim that he lost consciousness during this time.

Plaintiff has failed to produce evidence that Defendants acted maliciously or sadistically to cause him harm rather than in a good faith effort to maintain or restore discipline; further, no such inference may be made from the video evidence. Accordingly, even viewed in the light most favorable to Plaintiff, the evidence of his *de minimis* injury, sustained during a brief period of restraint while Defendants escorted him from the scene of his unprovoked criminal assault on corrections officers to disciplinary custody, would not permit a reasonable jury to conclude that Defendants utilized excessive force in violation of the Eighth Amendment. Thus, Defendants are entitled to summary judgment on this claim.

2. Conditions of confinement

As to the conditions of confinement claim, Defendants assert multiple bases for their motion; however, one is dispositive. Defendants argue that they are entitled to summary judgment on this claim because Plaintiff has neither alleged nor proved that any Defendant was personally involved in creating or maintain the alleged conditions of confinement in the RHU.

Defendants are correct. Generally, state actors are liable only for their own unconstitutional conduct. *Bistrian v. Levi*, 696 F.3d 352, 366 (3d Cir. 2012). Supervisors may only be held liable under Section 1983 if they participated in the events that caused the constitutional violation. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 537 n.3 (1981)); *Rizzo v. Goode*, 423 U.S. 362, 372-73 (1976). Accordingly, individual liability can be imposed under Section 1983 only if the state actor played

---

[4] The camera view does not consistently stay focused on Plaintiff, as he correctly asserts. However, there is no evidence to suggest that anything notable happened during the time the camera turned away from the relevant action.

an "affirmative part" in the alleged misconduct. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citing *Rode*, 845 F.2d at 1207); *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986). Government officials, therefore, may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *Id.* Furthermore, "it is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did." *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989).

Plaintiff has not shown that any Defendant was personally involved in or played any affirmative part in subjecting him to the conditions of his confinement in the RHU. In response to the motion for summary judgment, Plaintiff asserts that Lieutenant Bednaro was the officer in charge for "first shift" in the RHU who "had the power to intervene." ECF No. 27 at 3. At best, this statement establishes that Bednaro functioned in some type of supervisory role. As the above-stated law makes clear, no Section 1983 liability stems from such a role. Thus, Defendants are entitled to judgment as a matter of law on this claim.

IV.   Conclusion

For the reasons discussed herein, Defendants' Motion for Summary Judgment, ECF No. 18, is GRANTED. Judgment in favor of the Defendants pursuant to Fed. R. Civ. 58 will be entered separately.

/s/ Richard A. Lanzillo
RICHARD A. LANZILLO
Chief United States Magistrate Judge